UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH SIVERTSEN,

                    Petitioner,                    Case No. 1:15-cv-244

v.                                        Honorable Gordon J. Quist

SHIRLEE HARRY,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  Over a period of two days during January of 2012, a Kent County Circuit Court jury heard testimony on one charge of concealing stolen property against Petitioner Keith Sivertsen.  On January 18, 2012, after deliberating for about forty-five minutes, the jury returned its verdict: guilty. On March 1, 2012, the court sentenced Petitioner to a term of imprisonment of 7 to 15 years. Petitioner is presently serving that sentence with the Michigan Department of Corrections at the Pugsley Correctional Facility in Kingsley, Michigan.

        In his petition Petitioner raises five issues:

I.        Sentencing Guideline Departure. . . . [T]he trial court did not impose a sentence that was proportionate to the offense and the offender.

II.        [Petitioner's] sentence was increased by facts not proven to [the] jury nor admitted by [Petitioner].

III.        Trial court arraigned [Petitioner] [without] having subject jurisdiction over him.

IV.    Ineffective Assistance of Counsel (Trial).  Defense Counsel rejected a (1) year plea agreement [without Petitioner's] knowledge.  Trial Counsel failed to investigate and interview witnesses.

V.    Ineffective Assistance of Counsel (Appellate).  None of the issues supported in Supreme Court Brief were argued by counsel in C.O.A.

(Pet., ECF No. 1, Page ID.6-10, 14.)  Petitioner has exhausted his state court remedies with respect to each issue.

Petitioner timely filed his petition on March 6, 2015. On September 18, 2015, Respondent filed an answer to the petition, (ECF No. 5) and the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF No. 6.)  Respondent's answer argues that the habeas petition should be denied because the grounds upon which it is based are either not cognizable on habeas review, procedurally defaulted, or meritless.  Upon review and applying the AEDPA standards, I find that all habeas grounds are either not cognizable or without merit.  Accordingly, I recommend that the petition be denied.

## Procedural and Factual Background

Petitioner's habeas challenges relate to matters before trial (Issue III, jurisdictional issues, and Issue IV, trial counsel's rejection of a plea agreement and failure to investigate and interview witnesses) and matters after trial (Issues I and II, sentencing and Issue V, ineffective assistance of appellate counsel).  Accordingly, an in-depth recounting of the trial testimony of each witness is not necessary to resolve Petitioner's claims.

During April or May of 2011, Petitioner learned from his landlord that the landlord was looking to reroof the home in which Petitioner resided at 10 Gold Avenue in Grand Rapids, Michigan.  His nephews, who worked with Petitioner on occasion, learned of the prospective job.

Petitioner arrived home from work one day and found two pallets of shingles covered

by a tarp.  He discovered that his nephews Chris and Danny had dropped off 128 bundles of specialty roofing shingles at the house and asked that Petitioner inform the landlord that they would sell the shingles to him for $15 a bundle (about half of their value).  Knowing his nephews' criminal histories, Petitioner asked if the shingles were stolen.  He was told they were not.  They were (although perhaps not by Chris and/or Danny).

Chris, Danny, and Petitioner all testified.  The stories were not entirely consistent, but each witness was confident that he had not put the tarp over the shingles thereby concealing them.  There was no dispute with regard to the value of the property or the fact that it was stolen. The jury was only called upon to determine whether Petitioner received, possessed, or concealed the property having reason to know or believe that it was stolen.  MICH. COMP. LAWS § 750.535(1).  The jury, apparently, did not find Petitioner's denials of those facts credible.

When the trial court sentenced Petitioner on March 1, 2012, it noted that application of the Michigan Sentencing Guidelines yielded a minimum sentence range of 12 to 48 months. (Sentencing Tr., ECF No. 6-5, PageID.286.)  The court concluded, however, that the guidelines did not adequately account for Petitioner's extensive criminal history.  (*Id*.)  Accordingly, it departed upward from the guidelines range and imposed a minimum sentence of seven years.  (*Id*.)

At sentencing, Petitioner's counsel noted that a significant upward departure appeared to be a penalty for exercising the right to be tried by a jury.  (*Id*., PageID.285.)  At a status conference on November 28, 2011, Petitioner rejected a plea offer that included his plea of guilty to the single charge and dismissal of the habitual offender supplement.  (Hearing, Tr., ECF No. 6-2, PageID.195-196.)  The result of the plea would have been a maximum sentence of 5 years and a minimum in the range of 9 to 24 months.  (*Id*.)

The offer was extended again on January 17, 2012, the first day of trial.  The trial court outlined the terms of the plea offer and, after Petitioner acknowledged he understood the offer, the following exchange ensued:

THE COURT:     All right. Now do you wish to go to trial in this matter or do you wish to enter a no contest plea?

[COUNSEL]:     Your Honor, may I have a moment?

THE COURT:     Nope, we've had a moment.  Now it's either time to get a jury up here or not.

[PETITIONER]:     Your Honor, I honestly did not know that those shingles were stolen.

THE COURT:     Sir.

[PETITIONER]:     I'm pleading guilty to something that I didn't do.

THE COURT:     Well, let's get a jury up here then, okay?

Sir, I'm not going to argue about it. You're the one that's going to make your choices. You can enter a no contest plea if you want, it's up to you.  You know, they evidently have an officer that's going to say you made some admissions.  I wasn't there.  I don't know.  All I want to do is make sure that you understand what your options are so that you're not sitting in prison 10 years down the road, or 6 or 7 years down the road going, geez, I really wish I'd known what I was doing.

So unless you tell me different let's get a jury up here.

[COUNSEL]:     Your Honor, we'd ask for a jury.

THE COURT:     All right.  Let's get a jury.

(Jan. 17, 2013 Trial Tr., ECF No. 6-3, PageID.200-201.)

The trial court made clear that Petitioner's rejection of the plea and his sentencing after trial were independent events.  (Sentencing Tr., ECF No. 6-5, PageID.286.)  The court noted

-4-

that Petitioner chose to reject the plea and to instead proceed to trial.  (*Id*.)  Though the sentence

followed from Petitioner's choice, it was not a punishment for it.  (*Id*.)  Rather, the sentence was a

punishment for the finding of guilt at trial.  (*Id*.)

Petitioner filed an appeal in the Michigan Court of Appeals with the assistance of

appellate counsel.  Counsel raised the sentencing issues (Issues I and II above).  Petitioner sent a

Standard 4 pro per brief to counsel for filing in the court of appeals.  Counsel filed the brief late and

the court of appeals refused to consider it.  On April 18, 2013, the court of appeals issued an opinion

rejecting Petitioner's claims of error and affirming his conviction and sentence.  (Mich. Ct. App.

Op., ECF No. 6-6, PageID.288-291.)

Petitioner filed a pro per application for leave to appeal in the Michigan Supreme

Court.  Petitioner raised the two issues he had raised in the Michigan Court of Appeals as well as

two new issues: his trial counsel rendered ineffective assistance in rejecting the plea offer and

appellate counsel rendered ineffective assistance because he failed to raise trial counsel's ineffective

assistance and failed to timely file the Standard 4 brief.  (Pet.'r's Appl. for Leave to Appeal, ECF

No. 6-7, PageID.368, 375.)  On September 3, 2013, the supreme court denied leave to appeal.

(Mich. Ord., ECF No. 6-7, PageID.350.)

Petitioner then returned to the trial court to file a motion for relief from judgment

under MICH. CT. R. 6.500 *et seq*. raising habeas issues III, IV, and V.  (Pet.'r's Mot., ECF No. 6-8,

PageID.423.)   The trial court considered Petitioner's claims on the merits and rejected each one.

(Op. and Ord., ECF No. 6-9, PageID.466-476.)  Petitioner sought leave to appeal in the Michigan

Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered

January 2, 2014, and June 24, 2014, respectively.  (Mich. Ct. App. Ord., ECF No. 6-10; Mich. Ord. ECF No. 6-11.)  Petitioner then filed his petition seeking habeas relief in this Court.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. ___, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

I.    Sentencing guideline departure

Petitioner acknowledges that the trial court provided a substantial and compelling reason to depart from the guidelines minimum sentence range.  (Pet., ECF No. 1, PageID.6)  Nonetheless, Petitioner contends the departure was objectionable because the resulting sentence was not proportionate to the offense and the offender.  (*Id.*)  In so framing his challenge, Petitioner has raised only a state law issue that is not cognizable on habeas review.

In his briefs before the Michigan appellate courts, Petitioner did not argue that his seven-year minimum sentence violated the Eighth Amendment; rather, he claimed that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).[1]   A federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005);

---

[1]Moreover, the Michigan Court of Appeals resolved the claim solely as a state law claim.  (Mich. Ct. App. Op., ECF No. 6-6, PageID.289-290.)

-8-

*Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

Even if Petitioner had raised his proportionality claim under the Eighth Amendment, his claim would be without merit.   The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

II.    Impermissible fact-finding at sentencing

Petitioner argues that his sentence was contrary to clearly established federal law because the sentencing judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt.  Petitioner bases his argument on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), continuing with *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005), then ending with *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013).[2]    In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated Sixth Amendment rights, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term.  The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing

---

[2]Although not cited by Petitioner, this line of cases also includes *Ring v. Arizona*, 536 US 584 (2002). Moreover, at the time Petitioner filed his Michigan Court of Appeals brief, the United States Supreme Court had granted certiorari in *Alleyne*, but had not yet issued its opinion.

MICH. COMP. LAWS § 769.8).  Only the minimum sentence is based on the applicable sentencing guideline range.  *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)).  The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*.  *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

The Supreme Court expanded the *Blakely* reasoning to mandatory minimum sentences in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013), decided only two months after Petitioner was sentenced.  Shortly thereafter, while Petitioner's application for leave to appeal was still pending in the Michigan Court of Appeals, that court concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law.  *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013), *rev'd* 870 N.W.2d 561 (2015).[3]  The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment.  *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013).  As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent.  *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It

---

[3]*Herron* was reversed following the decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  *Lockridge* is discussed in detail below.

said nothing about guidelines sentencing factors . . . .) (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

Recently, however, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court considered the question the Michigan Court of Appeals had faced in *Herron* and reached the opposite conclusion.  The *Lockridge* court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*.  *Lockridge*, 870 N.W.2d at 506.  As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. *Id.* at 520-521.

The Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review.  This Court may consider only the "clearly established" holdings of the United States Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  For the same reasons, it may not consider the holdings of state courts. Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on

-12-

the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists could and did disagree about whether *Alleyne* applied to the calculation of Michigan's minimum sentencing guidelines. *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme and cannot form the basis for habeas corpus relief.

Even if it could be said that the decision in *Alleyne*, as applied to the Michigan sentencing scheme, and as that scheme was interpreted by the *Lockridge* court, represented "clearly established" federal authority for purposes of collateral habeas corpus review, Petitioner could not prevail. The judicial fact-finding to which Petitioner now objects had no bearing on the determination of Petitioner's guidelines minimum range. Thus, *Alleyne* does not apply here. From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here when the court departed upward from the minimum range established by the guidelines, violates the Sixth Amendment.

The distinction is apparent in the remedy adopted to correct the constitutional infirmity in mandatory minimum guidelines sentencing schemes. In *Lockridge*, the Michigan Supreme Court determined it could eliminate the Sixth Amendment problem by making the guideline minimum range advisory and the minimum sentence a matter for the court's discretion. That was the same remedy the United States Supreme Court had adopted previously in *Booker*, 543

-13-

U.S. at 245.  The *Booker* court reasoned that if the sentencing rules were not mandatory and did not

impose binding requirements on sentencing judges "the statute falls outside the scope of *Apprendi's*

requirement."  *Booker*, 543 U.S. at 259.

Whether considered before or after *Lockridge*, the trial court's departure from the

mandatory minimum sentence in Petitioner's case represents an exercise of the court's discretion.

The facts found to support the exercise of that discretion do not "increase[ ] the penalty for the crime

beyond the prescribed statutory maximum[,]" *Apprendi*, 530 U.S. at 490, or "increas[e] the

mandatory minimum[,]" *Alleyne*, 133 S.Ct. at 1260, and therefore need not "be submitted to a jury,

[or be] proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  Petitioner has failed to

demonstrate that his sentence is contrary to clearly established federal law because it violates his

Sixth Amendment rights.

Moreover, the very premise of Petitioner's argument–that the trial court departed

upward based on facts that were neither found by a jury or admitted by Petitioner–is demonstrably

false on this record.  The court departed because of Petitioner's extensive criminal record.  Petitioner

admitted that criminal history at trial and at sentencing.[4]  Petitioner's challenge to "judicial fact-

finding" at sentencing fails at every possible level of analysis.

III.    Radical jurisdictional defects

Petitioner offers three jurisdictional defects that he claims violated his right to due

process: the felony warrant was initiated by the Assistant Prosecutor rather than the Prosecutor; the

felony complaint does not contain sufficient information to support probable cause to support the

---

[4] Additionally, as the Michigan Court of Appeals recognized (Mich. Ct. App. Op., ECF No. 6-6, PageID.290-291 n.1), the Supreme Court in *Apprendi* carved out an exception for prior convictions.  *See Apprendi*, 530 U.S. at 495-496 (citing *Almandarez-Torres v. United States*, 523 U.S. 224 (1998)).

felony warrant; and the felony information was insufficient to give jurisdiction to Kent County.  The

trial court considered and rejected each "defect" when it denied Petitioner's motion for relief from

judgment:

> First, defendant argues that the Felony Complaint in this action is null and void because the Felony Warrant was authorized by an assistant prosecutor rather than the prosecutor. . . . Defendant argues that it is well settled law in Michigan that an assistant prosecutor has no authority whatsoever to authorize a warrant unless the prosecutor is absent, sick, or disabled.  Defendant is wrong.  The Court of Appeals long ago rejected this argument . . . .
>
> *        *        *
>
> Second, defendant argues that the Felony Complaint does not contain any information to support a finding that probable cause existed for the Felony Warrant to be issued. . . . Defendant argues that the Felony Complaint contains no factual allegation other than the allegation that defendant violated a statute.  Again, defendant is wrong. In addition to citing the statute for receiving and concealing stolen property, the Felony Complaint indicates that: the stolen property was shingles; the offense occurred on May 17, 2011; the location of the offense was 10 Gold Avenue, NW, in Grand Rapids; and the victim of the offense was Mr. Roof. The factual allegations in the Felony Complaint were sufficient for the magistrate to find probable cause that defendant committed the alleged offense, therefore, providing a basis to authorize the Felony Warrant.
>
> *        *        *
>
> Third, defendant argues that the Felony Information merely referred to the receiving and concealing statute and provided no particular statement of facts, and, therefore, it was insufficient to confer jurisdiction to this Court. . . . In this case, the Felony Information adequately informed defendant of the charge against him.

(Oct. 25, 2013 Op., ECF No. 6-9, PageID.468-470.)

The determination of whether a state court is vested with jurisdiction under state law

over a criminal case is a function of the state courts, not the federal courts.  *Wills v. Egeler*, 532 F.

2d 1058, 1059 (6th Cir. 1976).  It is well-settled that a purported violation of state law does not

provide a basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  "In

-15-

conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

Moreover, the state court here determined that there were no jurisdictional defects. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 Fed.Appx. 473, 475 (6th Cir. 2001). Accordingly, this Court is bound by the state court's determination that jurisdiction over Petitioner was established.

To the extent Petitioner intended to challenge the validity of his arrest as an issue distinct from his jurisdictional challenge, his claim is also not cognizable. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). The method by which Petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigration & Naturalization Serv. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v.*

*Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)).  Accordingly, any claim of illegal arrest would be unavailing.

Similarly, to the extent Petitioner attempts to distinctly challenge the sufficiency of the felony information,[5] his claim has no merit. The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense.  *See*, *e.g.*, *In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.  *Combs v. State of Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.  *Id*.  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review."  *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira*, 806 F.2d at 639.  In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied.  *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

---

[5]The felony information, as well as the complaint and warrant, are attached to Petitioner's motion for relief from judgment.  (Pet.'s Mot., ECF No. 6-8, PageID.454-456.)

Petitioner does not claim that he was unable to prepare a defense because of deficiencies in the felony information.  Moreover, as noted by the trial court with respect to the felony complaint, the felony information "[i]n addition to citing the statute for receiving and concealing stolen property, . . . indicates that: the stolen property was shingles; the offense occurred on May 17, 2011; the location of the offense was 10 Gold Avenue, NW, in Grand Rapids; and the victim of the offense was Mr. Roof."   (Oct. 25, 2013 Op., ECF No. 6-9, PageID.469.)   The information was sufficiently definite and certain to permit Petitioner to prepare for trial.  Petitioner has failed to establish a due process violation because of insufficient notice of the charge.

IV.    Ineffective assistance of trial counsel

Petitioner maintains that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment in two respects: counsel failed to investigate and interview witnesses and counsel failed to inform Petitioner or consult with Petitioner or advise Petitioner regarding a plea offer on the first day of trial, but instead declined the offer without seeking Petitioner's input.   In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also*

-18-

*Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

A.    Failure to investigate and interview witnesses

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'"  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate

-19-

all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally

-20-

ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

The trial court, relying on the *Strickland* standard, concluded that Petitioner had failed to establish that his counsel's performance was deficient with respect to his investigation or interviewing of witnesses:

> As for his allegations that his trial counsel failed to prepare a trial strategy, and failed to investigate the case or interview witnesses, defendant offers no facts in support, not even in his affidavit. Defendant cites plenty of legal authority, but makes no specific arguments as to what his trial counsel failed to investigate and who he failed to interview.

(Oct. 25, 2013 Op., ECF No. 6-9, PageID.471.)

In his habeas petition and supporting materials, he has again failed to present any evidence regarding what further investigation might have revealed or what additional witnesses might have said. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional

assistance." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 689).  Absent evidence of what the investigation would have revealed or what additional witnesses might have said, "Strickland's deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient." *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016); *see also Carter v. Mitchell*, 443 F.3d 517, 531 (6th Cir. 2006) (petitioner "provided no basis for a finding that trial counsel's investigation was unreasonable" where he did not introduce "any statement from trial counsel describing what [counsel] did or did not do in investigating [the petitioner's] background"); *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008) (rejecting ineffective-assistance claim on habeas review where petitioner "ask[ed] this court to assume," based on "sheer speculation," that his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion").

Two of the four elements necessary to establish receiving and concealing stolen property were undisputed: the property was stolen and the value of the stolen property.  The issues left for the jury were whether Petitioner had received, possessed, or concealed the property and whether Petitioner had reason to know or believe that the property was stolen.  With the exception of one person, a person who only helped load up the shingles and drop them off, everyone who touched the shingles or communicated with Petitioner about the shingles testified.  It is difficult to conceive of an investigative approach or any witness testimony that might have shed more light on what Petitioner knew or believed or Petitioner's connection to the shingles.

Petitioner has failed to show that the Michigan court's rejection of Petitioner's ineffective assistance claim relating to counsel's investigation is contrary to or an unreasonable application of clearly established federal law.  Moreover, Petitioner has failed to demonstrate that

the court made an unreasonable determination of fact on the record before it.  Accordingly, Petitioner is not entitled to habeas relief on this ground.

> B.    Counsel's ineffective assistance with regard to the plea offer

In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant about a plea offer, the two-part *Strickland* standard continues to apply.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different.  *See id.*; *Lafler*, 132 S. Ct. at 1385-87.  In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

Petitioner's challenge to his counsel's assistance with respect to the plea offer made on the first day of trial is a little difficult to pin down.  At times he seems to suggest that counsel never communicated the offer to him, at other times he seems to indicate that counsel improperly advised him to reject the plea, and at other times he suggests that counsel communicated a rejection of the offer without Petitioner's consent.  Nonetheless, the trial court found that the record did not support Petitioner's various challenges.

The trial court noted that Petitioner's own statements contradict his claim that trial counsel did not discuss the plea offer with Petitioner:

> THE COURT:          Sir, you've talked this matter over with your attorney, is that correct?
>
> [PETITIONER]:        Yes, sir.

THE COURT:          . . . Do you understand the offer that is being made to you today?

[PETITIONER]:       Yes, sir.

(Oct. 25, 2013 Op., ECF No. 6-9, PageID.473) (quoting Jan. 17, 2012 Trial Tr., ECF No. 6-3, PageID.200.)

   The trial court then explained in detail to Petitioner that if he went to trial and lost, his minimum sentence under the guidelines would fall between 12 and 46 months and that his extensive record provided a reason to exceed the guideline range (the court specifically mentioned 6 or 7 years or as much as 10 years) as opposed to a range of 9 to 23 months if he pleaded guilty or no contest.  (Jan. 17, 2012 Trial Tr., ECF No. 6-3, PageID.200-201.)   The court explained that if he went to trial and lost his maximum sentence would be 15 years, as opposed to 5 years if he accepted the plea offer.  (*Id*.)  The court also explained that, if Petitioner took the stand, the prosecutor could inform the jury regarding Petitioner's prior convictions.  (*Id*.)   Petitioner responded by saying he did not know the shingles were stolen–he did not do it.  (*Id*.)  The court then stated: "Sir, I'm not going to argue about it.  You're the one that's going to make your choices. . . . So unless you tell me different let's get a jury up here."  (*Id*.)  Petitioner said nothing so his counsel indicated the jury should be called up to the courtroom.  (*Id*. at PageID.201.)

   Under those circumstances, the trial court concluded Petitioner could not establish prejudice on a claim that counsel had misadvised him regarding the plea.  Petitioner could not show that he would have accepted the plea if he were properly advised because, based on the court's findings, with a complete understanding of the risks and benefits, Petitioner insisted on going to trial because he was not guilty.

-24-

The trial court's findings are not unreasonable on the record.  The trial court's decision is not contrary to, nor an unreasonable application of, *Strickland*, *Hill*, or *Lafler*, the clearly established federal law on this issue.  Petitioner has failed to establish entitlement to habeas relief.

V.    Ineffective assistance of appellate counsel

Finally, Petitioner claims his appellate counsel rendered ineffective assistance because counsel failed to raise the jurisdictional challenges or ineffective assistance of trial counsel claims raised herein (Issues III and IV).

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*  Certainly*,* counsel's failure to present issues that do not have merit does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

The trial court concluded that Petitioner's showing was insufficient:

> Obviously, given that this Court has determined that defendant's alleged jurisdictional defects are without merit, and that he has failed to demonstrate "actual prejudice" as to his claim of ineffective assistance of trial counsel, this Court finds that defendant has not made the required showing.  Consequently, he has not demonstrated "actual prejudice" for this claim.

(Oct. 25, 2013 Op., ECF No. 6-9, PageID.476).  For the reasons set forth above in resolving Issues III and IV, the trial court's resolution of this issue is eminently reasonable.  The issues that Petitioner contends his appellate counsel should have raised have no merit.  Accordingly, Petitioner cannot show that the state court's determination rejecting Petitioner's claim is contrary to or an unreasonable application of clearly established federal law.

### **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  See *Slack v. McDaniel*, 529 U.S. 473 (2000).


Date:  March 14, 2017                                  /s/ Ellen S. Carmody
                                                       ELLEN S. CARMODY
                                                       United States Magistrate Judge


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).